UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSSLINE JAMES-PARKER,

       Plaintiff,

v.

                                             Case No. 1:11-cv-1236
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

       Plaintiff was born on May 8, 1959 (AR 213).[2]  She alleged a disability onset date of

August 4, 2004, due to work-related injuries to her left shoulder and neck (AR 20, 213).  Plaintiff

was later involved in an automobile accident on April 21, 2006, in which she sustained additional

injuries (AR 20).  Plaintiff  identified her disabling conditions as left shoulder problems (rotator

cuff) and neck pain (AR 198).  She has an 11th grade education and previous employment as a

machine operator and assembler (AR 203, 206).  The ALJ reviewed plaintiff's claim *de novo* and

---

[1] The court notes that plaintiff is identified on the complaint and docket sheet as "Rossline James-Parker."  *See* Compl. (docket no. 1).  However, plaintiff was identified in the administrative proceedings as "Rosslind James."

[2] Citations to the administrative record will be referenced as (AR "page #").

entered a written decision denying benefits on February 9, 2009 (AR 16-24).[3]  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

---

[3] Plaintiff had two administrative hearings.  The first hearing held on September 16, 2008, was adjourned because plaintiff requested an attorney (AR 97-107). The ALJ's decision is based upon the second hearing held on October 21, 2008 (AR 25-96).

A claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 2, 2004 and that she met the insured status requirements under the Act through December 31, 2010 (AR 18).  Second, the ALJ found that plaintiff has severe impairments of left shoulder impingement and neck pain (AR 18).  While plaintiff testified as to symptoms suggesting depression, the ALJ found that medical records did not reveal the existence of a medically determinable affective disorder or other determinable mental impairment (AR 19).   At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19).  In this regard, the ALJ reviewed Listings 1.02 (major dysfunction of a joint(s) (due to any cause)) and 1.04 (disorders of the spine) (AR 19).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), and that "[s]he retains the functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours of an eight-hour workday, sit six hours of an

eight-hour workday, push and/or pull occasionally with the left upper extremity, and reach occasionally with the left upper extremity." (AR 19).  The ALJ also found that plaintiff was capable of performing her past relevant work as a production assembler and that this work did not require the performance of work-related activities precluded by her RFC (AR 23).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 4, 2004(the alleged onset date) through February 9, 2009 (the date of the decision) (AR 23).

### III.  ANALYSIS

Plaintiff raised two issues on appeal.

**A.      The ALJ erred in determining that plaintiff could perform a reduced range of light work.**

**1.      Dr. Healey's lifting restrictions**

Plaintiff contends that the ALJ "entirely ignored" lifting restrictions issued by John H. Healey Jr., M.D., a treating orthopedic specialist.  Plaintiff's Brief at p. 10.  Plaintiff specifically refers to lifting restrictions dated December 21, 2004 and February 15, 2005 which were admittedly "never made part of the [administrative] record."  *Id.* at p. 10, fn. 2; Work status and restrictions (docket no. 10-1).   On December 21, 2004, Dr. Healy limited plaintiff to no lifting over four pounds, with the following restrictions on her left arm: keep affected arm at side; use affected arm only below shoulder level; and no repetitive pushing, pulling, reaching with affected arm.  Work status and restrictions (docket no. 10-1 at p. 2). Dr. Healy issued the same restrictions on February 15, 2005.   Work status and restrictions (docket no. 10-1 at p. 3).

In his decision, the ALJ considered Dr. Healy's restrictions as set forth in the administrative record:

As for medical opinions, on March 25, 2004, (which was prior to the claimant's alleged onset date of August 4, 2004), Dr. Healey advised the claimant to avoid lifting five pounds and do no overhead or repetitive work involving the left upper extremity (Exhibit 2F/12). On August 17, 2004, Dr. Healey stated that the claimant was "doing pretty well" and that her "pain was reasonably well controlled" with reference to her left shoulder subsequent to her surgery two weeks prior (Exhibit 2F/10). On August 26, 2004, the orthopedist allowed the claimant to return to work (with essentially her pre-operative restrictions) that she not lift more than four pounds, grasp, or reach with the left shoulder. The doctor indicated that these limitations would last for approximately six weeks (Exhibit 2F/10).

On September 14, 2004, the claimant's return to work was revised to October 2004. On October 26, 2004, Dr. Healey stated that the claimant was to remain six weeks [sic] from going back to work, even on a restricted status. On December 21,2004, Dr. Healey determined that the claimant was at her maximum medical improvement, that surgical intervention of the scapula was not likely to make further improvement, and that the claimant should continue with a multidisciplinary pain clinic. The claimant was returned to work with restrictions "based upon her limitations of motion" (Exhibit 2F/6). I observe that the claimant's return to work at her former occupation was still well short of 12 months' duration from her alleged onset date.

The State agency medical consultant assessed that the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours of an eight-hour workday; sit six hours of an eight-hour workday; and reach in all directions on a limited basis (Exhibit 7F). In July 2008 another State agency medical reviewer concluded that the claimant continued to have a light residual functional capacity (Exhibit 9F/4).

Dr. Healey did return the claimant to her past work, which the vocational expert reports was light (and medium) in exertional demands. The State agency physician of [sic] July 2006 and the State agency reviewer in July 2008 have both concluded that the claimant retains the functional capacity for light work. The July 2006 State agency medical consultant has additionally provided that the claimant is limited in reaching. The comments and opinions of the claimant's treating orthopedist and the State agency personnel persuade me that the claimant is capable of performing light work where she does only occasional pushing, pulling, and reaching with the left upper extremity.

(AR 22).

These work restrictions attached to plaintiff's brief were not provided to the ALJ.

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider

the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under

42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th

Cir.1988).  Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be

taken before the Commissioner of Social Security, but only upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence

into the record in a prior proceeding . . ."  42 U.S.C. § 405(g).  In a sentence-six remand, the court

does not rule in any way on the correctness of the administrative decision, neither affirming,

modifying, nor reversing the Commissioner's decision.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98

(1991).  "Rather, the court remands because new evidence has come to light that was not available

to the claimant at the time of the administrative proceeding and that evidence might have changed

the outcome of the prior proceeding."  *Id.*

Here, plaintiff does not seek a sentence-six remand with respect to the new evidence.

Rather he seeks a reversal and remand for award of benefits, asserting that the ALJ's RFC

determination is greater than the lifting requirements which appear in Dr. Healey's records.  The

court disagrees with this assertion.  Dr. Healey's office notes referenced by the ALJ do not support

the lifting limitations as set forth in the December 2004 and February 2005 restrictions.  Those notes

refer to limitations in plaintiff's range of motion rather than limitations in lifting (AR 258-60).

Based on the administrative record in this case, plaintiff's claim of error that the ALJ ignored Dr.

Healey's restrictions, which were not made part of the administrative record, will be denied.

### 2. Plaintiff's credibility and motive for secondary gain

The ALJ found that plaintiff's statements regarding the intensity, persistence and

limiting effects of her symptoms are not credible to the extent they are inconsistent with the RFC

determination (AR 20). In discounting plaintiff's credibility, the ALJ considered her motive for

secondary gain:

> Moreover, the medical records suggest that the claimant may have secondary gain concerning her allegations. In December 2004 John H. Healey Jr., M.D., an orthopedic specialist, indicated that the claimant had a possible secondary gain with reference to her worker's compensation claim. On April 21, 2006, there is a suggestion to the claimant's having secondary gain resulting from her motor vehicle accident lawsuit (Exhibits 2F, 4F).

> In addition, on April 24, 2006, a Metro Health Southwest office note discloses that the claimant had ongoing left shoulder pain "for which she is currently in the process of pursuing disability that however is apparently not significantly worse than it was before the accident." She was described as "in no current distress." In May 2006 it was also noted that the claimant had no pain, paresthesias, weakness, or joint swelling involving the upper extremities. She had neck range of motion to about 45 degrees rotation bilaterally actively and 50 degrees passively (Exhibits 3F/5, 4F).

> The claimant was oddly evasive in replying to my questions concerning her worker's compensation funds and her motor vehicle accident lawsuit settlement. The manner of her responses further detracts from her credibility.

(AR 21).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions

among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

"It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of

the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v.

Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility

determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent

years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are

unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir.

2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

One inconsistency in the record which an ALJ can consider in discounting a claimant's credibility is the presence of a "strong element of secondary gain." *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir.1996). *See, e.g.*, *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir.2004) (court's finding that the claimant's incentive to work might be inhibited where she cancelled physical therapy appointments and was receiving long-term disability payments of $1,700.00 per month was a type of "a strong element of secondary gain" which the ALJ could consider in discounting the claimant's credibility). *See also*, *Foster v. Astrue*, 277 Fed.Appx. 462, 466 (5th Cir. 2008) (an ALJ can discount a claimant's credibility where the claimant exhibits a willingness to provide false or exaggerated information for secondary gain); *Leech v. Barnhart*, 177 Fed.Appx. 225, 228 (3rd Cir. 2006) ("it was not improper for the ALJ to consider [the claimant's] financial interest in her ongoing worker's compensation claim and underlying Social Security disability benefits claim and her possible addiction when making the credibility determination").

Here, the ALJ could properly discount plaintiff's credibility based upon secondary gain. As an initial matter, while the ALJ viewed Dr. Healey's records from December 2004 as indicating a motive for secondary gain, the record does not support the ALJ's characterization of those records. However, there is some suggestion of secondary gain in plaintiff's other medical

9

records, such as her examination by Craig Bethune, D.O., who noted that three days after plaintiff's

April 21, 2006 auto accident "she was having no pain, paraesthesia or weakness involving the upper

extremities and is otherwise essentially as usual" and that plaintiff's "[o]ngoing left shoulder pain

for which she is currently in the process of pursuing disability . . . is apparently not significantly

worse than it was before the accident" (AR 287). In addition, plaintiff was evasive to the ALJ's

questions regarding her history of claims and lawsuits related to long term disability, workers

compensation and no-fault insurance (AR 41-42, 45-54, 57-60, 62-68). This claim is denied.

**B.      The ALJ erred in determining that plaintiff was
              capable of performing past relevant work as a
              production assembler.**

At step four of the sequential evaluation, the ALJ found that plaintiff could perform

her past relevant work as a production assembler, which was light and unskilled work "both as

[plaintiff] performed the work and according to the *DOT* [*Dictionary of Occupational Titles*]" (AR

23). In reaching this determination, the ALJ said in pertinent part:

> The vocational expert stated that a hypothetical individual of the claimant's
> age, education, and residual functional capacity as determined in this decision could
> not do the claimant's past relevant work as a production assembler as the claimant
> actually did it. The vocational expert stated, nonetheless, that the hypothetical
> individual could do the work as normally performed as defined by the *DOT*. The
> vocational expert related that his testimony was consistent with the information
> contained in the *DOT*.
>
> The claimant's work as a production assembler was performed within the last
> 15 years. In addition, the work lasted long enough for the claimant to learn to do the
> job and resulted in substantial gainful activity level earnings (Exhibits 7D, 2E).

(AR 23). Plaintiff contends that the ALJ misstated the vocational expert's (VE's) testimony on this

issue.

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987).

A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

When the court obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the

11

ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Here, the ALJ asked the VE to identify plaintiff's past relevant work (AR 82). The VE testified that plaintiff's past work as a production assembler was unskilled, light exertional work, both as defined in the DOT and as plaintiff performed it (AR 82). The ALJ then posed a hypothetical question to the VE which set forth the limitations as in the RFC determination, and asked if the hypothetical person could perform plaintiff's past relevant work (AR 82-83). The VE testified that the assembler position, as plaintiff performed it, would be ruled out due to the restrictions on "pushing/pulling" (AR 83). The VE further testified that, as defined by the *DOT*, "an assembler, a production assembler, covers nearly 35 plus thousand jobs from light through, through heavy" and that "[t]here are bound to be a portion of them that are going to fit [the hypothetical person]" (AR 83-84).

Ultimately, the VE testified that "[a]s defined by the *DOT*, there would be some production assembler jobs that [plaintiff] could perform, not necessarily the one she performed at [her former employer]" (AR 85). In terms of the numbers of these positions, the VE testified that:

> As a production assembler is more commonly performed, most of them would be ruled out. There would be a portion left. We'd go from about 14,000 production assemblers – or, production workers, down to about 2,000, with that RFC.

(AR 85).

Plaintiff contends that the ability to perform 2,000 of 14,000 jobs is not work as "generally performed in the national economy" under 20 C.F.R. §§ 404.1560 and 416.960, which provide in pertinent part that:

> [A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental

12

limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

The court disagrees with plaintiff's contention.  At step four of the sequential evaluation, the Commissioner is not required to demonstrate that a claimant's past relevant work exists in significant numbers in the national economy:

If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. *We will not consider* your vocational factors of age, education, and work experience or *whether your past relevant work exists in significant numbers in the national economy*.

20 C.F.R. §§ 404.1560(b)(3) and 416.960(b)(3) (emphasis added).  *See Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 556-58 (6th Cir. 1995) (holding that the agency's framework for determining whether a claimant can perform the functional demands and duties of his past relevant work as generally required by employers throughout the national economy does not require consideration of whether the job exists in significant numbers in the national economy).  This claim of error is denied.

## IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.

Dated:  March 19, 2013                         /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge